IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| BOWINGS & HUBER LLC, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. GLR-21-3090 |
| HARTFORD FIRE INSURANCE CO., et al., | * | |
| | * | |
| Defendants. | | |

***

**MEMORANDUM OPINION**

THIS MATTER is before the Court on Defendant Facility Engineering Services Corporation's ("FESC") Motion to Compel Arbitration and Dismiss, or, in the Alternative, Stay (ECF No. 16). The Motion is ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2021). For the reasons outlined below, the Court will grant the Motion to Stay and deny the Motion to Dismiss.

### I. BACKGROUND

**A.   Factual Background**

In this contractual dispute, the United States Army Corps of Engineers contracted with Clark Construction Group, LLC to build an airplane hanger at Joint Base Andrews (the "JBA project"). (Compl. ¶ 6, ECF No. 1). Clark then subcontracted with Kirlin Design Build, LLC ("KDB") for the mechanical scope of work for the JBA project. (Id. ¶ 7). KDB, in turn, subcontracted with FESC for the electrical controls work. (Id. ¶ 8).

As required under KDB's contract with FESC, FESC secured payment and performance bonds for FESC's subcontractors' and suppliers' good-faith performance of

the subcontract. (Id.). FESC secured these bonds through Defendant Hartford Fire Insurance Company ("Hartford"). (Id. ¶ 9). The bonds, issued on July 15, 2019, named FESC as the Principal and KDB as the Obligee. (Id.). In sum, the bonds insured the "benefit of all persons supplying labor or material in the prosecution of work provided for in said Subcontract." (Id.).

On January 11, 2021, FESC entered into the Master Subcontractor Agreement (the "MSA") with Plaintiff Bowings & Huber, LLC d/b/a BoMark ("BoMark"), further subcontracting electrical labor for the JBA project. (Id. ¶ 10). FESC issued a purchase order to BoMark under the terms of the MSA on February 18, 2021. (Id.). BoMark supplied labor to FESC from March 1, 2021 to July 8, 2021 and sent FESC three invoices for payment. (Id. ¶ 11). FESC did not pay two of the invoices and told BoMark that it would not make the payments. (Id. ¶ 12). Thus, BoMark filed a claim with Hartford on the payment bond. (Id.).

On September 1, 2021, Hartford responded to BoMark's claim for to request additional information. (Id.). Hartford acknowledged receiving the information on September 22, 2021, but Bomark never received a response regarding its request for payment. (Id.).

**B.   Procedural History**

On December 3, 2021, BoMark filed suit against Hartford for claims arising out of the payment bond furnished by Hartford for labor and materials on the JBA project.

(Compl. at 1).[1] BoMark makes two claims against Hartford: (1) a common law payment bond claim for the amounts owed for BoMark's work on the JBA project under its purchase order with FESC for $242,336.54, including pre- and post-judgment interest; and (2) a request for a declaratory judgment stating that BoMark is a valid claimant under the payment bond and has a valid claim and therefore Hartford is obligated to pay BoMark the monies with interest. (Id. ¶¶ 14–20). Hartford filed its Answer on January 18, 2022. (ECF No. 5). One week later, FESC filed a Motion to Intervene. (ECF Nos. 8–9). BoMark filed its Opposition on February 4, 2022. (ECF No. 12). This Court granted the Motion in part and denied the Motion in part. (ECF No. 14). Specifically, the Court granted FESC's intervention as to the subject litigation regarding the JBA project but denied intervention with respect to a separate project, the Kaiser Permanente Nova ("KP Nova") project.[2] (Id.).

After FESC formally entered this lawsuit as a Defendant, it filed a Motion to Compel Arbitration and Dismiss, or, Alternatively, Stay. (See Def.'s Mot. Compel Arbitration & Dismiss Alternatively Stay ["Mot."] at 1, ECF No. 16). FESC asserts that BoMark's claims in the subject lawsuit are based on the work BoMark rendered to FESC under FESC and BoMark's MSA, which must be resolved through arbitration under the terms of the MSA. (Id. ¶¶ 3–7). BoMark filed its Opposition on March 1, 2022, and FESC filed its Reply on March 9, 2022. (ECF Nos. 17–18).

---

[1] Citations to exhibit page numbers refer to the pagination assigned by the Court's Case Management/Electronic Case Files ("CM/ECF") system.

[2] As mentioned in the Court's prior Order, the parties are currently litigating the KP Nova Project in the Circuit Court for Baltimore County, Case No. C-03-CV-22-140 (Circ.Ct.Md.). (ECF No. 14).

## II.   DISCUSSION

### A.   Standard of Review

#### 1.   Applicable Law

The scope of the Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("FAA"), is broad, encapsulating any arbitration provision "included in 'a contract evidencing a transaction involving commerce.'" Rota-McLarty v. Santander Consumer USA, Inc., 700 F.3d 690, 697 (4th Cir. 2012) (quoting 9 U.S.C. § 2). Rather than basing its Motion on the FAA, FESC cites the Maryland Uniform Arbitration Act, Md. Code Ann., Cts. & Jud. Proc. § 3-201 et seq. ("MUAA"). (See Def.'s Mem. Supp. Mot. Compel Arbitration & Dismiss Alternatively Stay ["Mem."] at 2, ECF No. 16-1). Thus, the Court must first determine whether the FAA or the MUAA applies.

The arbitration agreement in FESC and BoMark's MSA does not contain a choice-of-law provision. The only mention of applicable standards and rules provides that any controversy or breach "shall be settled by arbitration in accordance with the construction Industry Arbitration Rules of the American Arbitration Association." (Master Subcontract Agreement ["MSA"] at 3, ECF No. 1-1). This incorporation does not provide insight into the parties' intent for the applicable law in potential arbitration. Further, in its Memorandum, FESC fails to explain why the MUAA applies. (See generally Mem.).

This Court previously examined whether the FAA or MUAA applied in a similar dispute. See generally Crim v. Pepperidge Farm, Inc., 32 F.Supp.2d 326 (D.Md. 1999). There, the agreements did not include a choice-of-law provision. Id. at 328 n.2. The Court ultimately applied the FAA "[b]ecause the agreements were between citizens of different

4

states, and involved interstate commerce." Id. Similarly here, the Court notes that the agreement regarding the construction of an airplane hangar implicates interstate commerce, a point the parties do not appear to dispute. Accordingly, the Court will apply the FAA.

    **2.    Motion to Compel Arbitration**

The FAA governs the enforceability of arbitration agreements and provides procedures for arbitrating and enforcing arbitration awards. Stone v. Wells Fargo Bank, N.A., 361 F.Supp.3d 539, 546 (D.Md. 2019). Federal substantive law applies to issues concerning arbitrability, and state-law contract principles govern the formation of arbitration provisions. Novic v. Midland Funding, LLC, 271 F.Supp.3d 778, 782 (D.Md. 2017), vacated on other grounds sub nom., Novic v. Credit One Bank, Nat'l Ass'n, 757 F.App'x 263 (4th Cir. 2019). A party can compel arbitration under the FAA, and, if so, a court "has no choice but to grant [the motion] where a valid arbitration agreement exists and the issues in [the] case fall within its purview." Stone, 361 F.Supp.3d at 547 (quoting Adkins v. Lab. Ready, Inc., 303 F.3d 496, 500 (4th Cir. 2002)). "[A] court must 'engage in a limited review to ensure that the dispute is arbitrable . . . .'" Id. (quoting Murray v. United Food & Com. Workers Int'l Union, 289 F.3d 297, 302 (4th Cir. 2002)). If there is an arbitration agreement between the parties and it encompasses the dispute, the FAA favors arbitration over litigation. Id. at 546.

The standard of review on a motion to compel arbitration under the FAA is similar to the motion for summary judgment standard. Novic, 271 F.Supp.3d at 782. The movant must show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Id. (quoting Fed.R.Civ.P. 56(a)). In evaluating a

motion to compel, a court cannot "weigh the evidence and determine the truth of the matter." Alston v. Navy Fed. Credit Union, No. GJH-21-00040, 2021 WL 4478698, at *8 (D.Md. Sept. 30, 2021) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)). Rather, a court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable interferences in h[is] favor[]" to determine whether there is a genuine dispute suited for trial. Id. (quoting Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 645 (4th Cir. 2002)).

**B.      Analysis**

FESC argues that the MSA includes an arbitration provision wherein BoMark agreed to arbitrate all controversies or claims arising out of or relating to the MSA with FESC. (Mot. ¶ 4). FESC asserts that the provision is valid and should be enforced because BoMark's claims against Hartford arise out of and relate to FESC's MSA with BoMark. (Mem. at 3–4). BoMark responds that the arbitration agreement in the MSA does not apply here because this case involves a common law bond payment claim against Hartford, not FESC, which provides that FESC and Hartford are jointly and severally liable for payment to third-party beneficiaries. (Pl.'s Opp'n Def.'s Mot. Compel Arbitration & Dismiss Alternatively Stay ["Opp'n"] at 1, ECF No. 17). Further, BoMark argues that the MSA is not incorporated into the bond, which would bind BoMark to arbitrate its claims with Hartford. (Id. at 2). Finally, BoMark asserts that the bond itself does not contain an arbitration provision and instead demonstrates the parties' intent to litigate and not arbitrate any disputes. (Id. at 3). The Court will address the arguments in turn.

1.     **Motion to Compel Arbitration Under The FAA**

A party seeking to compel arbitration under the FAA must demonstrate four elements:

> (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute.

Stone, 361 F.Supp.3d at 547 (quoting Adkins, 303 F.3d at 500–01). Here, there is an apparent dispute between BoMark and FESC. Specifically, BoMark contends that FESC has failed to make necessary payments in violation of the MSA. Next, there is an agreement between the parties that includes an arbitration agreement: the MSA. The MSA includes a provision stating that the parties agree to resolve disputes such as the instant one through arbitration. Third, the agreement involves interstate commerce, as it relates to the construction of a large airplane hangar that would invariably involve a plethora of supplies moving across state lines. Finally, although BoMark is the Plaintiff, it refuses to arbitrate this dispute.[3] Accordingly, FESC has demonstrated the four necessary elements to compel arbitration. Of note, however, is that FESC moves this Court to enforce the arbitration agreement in the MSA between BoMark and FESC even though this case includes a non-party to that agreement, Hartford. Thus, the Court must evaluate whether enforcement of

---

[3] While the test under the FAA for granting a motion to compel requires a defendant to fail, neglect or refuse arbitration, this Court has previously granted a defendant's motion to compel arbitration under the FAA. See generally In re Titanium Dioxide Antitrust Litig., 962 F.Supp.2d 840 (D.Md. 2013); Burrell v. 911 Restoration Franchise Inc., No. JKB-17-2278, 2017 WL 5517383 (D.Md. Nov. 17, 2017).

the arbitration agreement is permissible and necessary given the involvement of a non-party.

### a.   Compelling Arbitration with a Non-Party Defendant

It is well-settled that "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." Stone, 361 F.Supp.3d at 547 (quoting Levin v. Alms and Assocs., 634 F.3d 260, 266 (4th Cir. 2011)). Nonetheless, there are instances in which a non-signatory can be required to comply with arbitration. See Thomas v. Progressive Leasing, No. RDB-17-1249, 2017 WL 4805235, at *2–3 (D.Md. Oct. 25, 2017) (noting that the Fourth Circuit applies the "direct benefit" test, which estops a non-signatory "from refusing to comply with an arbitration clause when it [is seeking or] receives a direct benefit from a contract containing an arbitration clause" (quoting R.J. Griffin & Co. v. Beach Club II Homeowners Ass'n, 384 F.3d 157, 161 (4th Cir. 2004))). FESC does not seek an exception, as FESC explicitly moves this Court to compel BoMark, not BoMark and Hartford, to arbitrate its claims against FESC in accordance with the MSA. (Def.'s Reply Pl.'s Opp'n Mot. Compel Arbitration & Dismiss Alternatively Stay ["Reply"] at 3–4, ECF No. 18). Thus, FESC does not seek to compel a non-signatory to the arbitration agreement.

Furthermore, a claim is not needed for a party to compel arbitration, despite BoMark's assertion to the contrary. (Opp'n at 2). Instead, the FAA only requires a dispute between two parties that have a valid arbitration agreement. See Stone, 361 F.Supp.3d at 547. With its Motion, FESC seeks to resolve BoMark's dispute with FESC under the MSA. (See Reply at 3–4). Just as BoMark is entitled to sue on the bond held by Hartford to which FESC is a party, FESC is entitled to move this Court to compel arbitration. (Opp'n at 3;

see Stone, 361 F.Supp.3d at 547). BoMark suggests that FESC "is improperly attempting to circumvent the parties' express intent to litigate disputes by alleging that the terms of the MSA, and the arbitration provision therein, should govern BoMark's claims against [] Hartford." (Opp'n at 4). Nevertheless, it appears BoMark is attempting to circumvent arbitration by filing suit on the payment bond against Hartford when FESC owes it monies.

This Court previously explored a similar issue of compelling arbitration with a surety and a contractor who subcontracted construction per a contract containing an arbitration provision. See generally U.S. ex rel. MPA Constr., Inc. v. XL Specialty Ins. Co., 349 F.Supp.2d 934 (D.Md. 2004). As is the case here, the Court granted the contractor's motion to intervene after the subcontractor sued the contractor's surety for monies owed. Id. at 935–39. The intervenor defendant then moved for a stay pending arbitration, asserting that it had an agreement with the plaintiff that contained an arbitration provision. Id. at 940. The plaintiff opposed both the intervention and the stay. Id.

There, the Court evaluated a motion to stay in favor of arbitration. Id. at 940–41. The intervenor defendant sought to arbitrate the dispute according to the agreement with the plaintiff and moved the Court for a stay pending that arbitration. See id. at 936. Neither party challenged the validity and enforceability of the arbitration agreement. Id. at 940. Instead, the plaintiff opposed arbitrating the dispute with the surety and staying the proceedings pending arbitration between the intervenor defendant and plaintiff, as the plaintiff sued the surety rather than the contractor. Id. at 941. The plaintiff did not oppose arbitrating with the intervenor defendant, but nonetheless sought payment under its bond without delaying for any arbitration proceedings. Id. The plaintiff raised concerns that it

would be unable to collect a judgment from the intervenor defendant. Id. Noting aforementioned exceptions to enforcing arbitration agreements on non-signatory parties, the Court in MPA Construction was unpersuaded by plaintiff's arguments for payment on the bond pending formal arbitration. Id. at 941–42. It is a long-standing principle in Maryland that "[r]ecovery against the principal in [a] bond, even though the sureties were no parties to the suit, is prima facie binding upon the sureties." Id. at 942–43 (quoting Parr v. State, 17 A. 1020, 1022 (Md. 1889)). Accordingly, the Court granted the motion to stay pending arbitration and ordered the parties to arbitrate the dispute. Id.

As the Court noted in MPA Construction, denying a motion to stay pending an arbitration would be highly ineffective in the construction context. Id. at 941. This is because "in every public works project where the subcontractor agrees to a similar clause, the subcontractor could circumvent the arbitration provision by suing the surety." Id. (quoting U.S. ex rel. Tanner v. Daco Constr., Inc., 38 F.Supp.2d 1299, 1306 (N.D.Okla. 1999)). Also, this Court noted that it would be inefficient to have the parties arbitrate and litigate at the same time. Id. Thus, "in the interests of judicial economy, it is more efficient for [contractor[s] and subcontractor[s]] to arbitrate the underlying dispute before requiring [the surety] to litigate the dispute in federal court." Id. at 942 (quoting Tanner, 38 F.Supp.2d at 1306).

The same is true here. BoMark's arguments for payment on the bond before arbitration appear to be an attempt to circumvent arbitration. Thus, the Court will stay these proceedings to allow BoMark and FESC to resolve their disputes through arbitration under the MSA.

Finally, the Court recognizes that FESC alternatively seeks dismissal of this action pending arbitration under Federal Rule of Civil Procedure 12(b)(1). (Mot. ¶¶ 6–7). FESC does not explain why dismissal is preferable over a stay. (See generally Mot.; Mem.). In any event, the FAA provides that

> [i]f any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, **the court** in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, **shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement**, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3 (emphasis added). Accordingly, the FAA requires a stay of proceedings for disputes referred to arbitration rather than an outright dismissal. Thus, without compelling grounds to dismiss, the Court will stay this action under the FAA for the parties to participate in an arbitration regarding FESC's non-payment under the MSA.

## III.  CONCLUSION

For the foregoing reasons, the Court will grant FESC's Motion to Compel Arbitration and Stay (ECF No. 16) and will deny FESC's Motion to Dismiss. A separate Order follows.

Entered this 27th day of September, 2022.

                                                       /s/
                                      George L. Russell, III
                                      United States District Judge